IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ANDREW KASAYULI, et al., )
                               )
                   Plaintiffs, )
                               )
vs.                            )
                               )
UNITED STATES OF AMERICA,      )
                               )          No. 3:12-cv-0241-HRH
                   Defendant.  )
_____)


O R D E R

Cross-Motions for Ruling of Law[1]

Plaintiffs and defendant have exchanged motions for ruling of law with respect to the interpretation and application of AS 09.55.549 in the context of this medical malpractice case. Both motions are opposed. Oral argument has been requested and heard.

The complete text of AS 09.55.549 is appended to this order for ease of reference.

Subsection (d) of AS 09.55.549 places a $250,000 limit or "cap" on non-economic medical malpractice claims such as that made in this case. However, subsection (e) of AS 09.55.549 increases the limit on non-economic claims to $400,000 in cases of severe physical impairment – those more than 70% disabling. Finally, subsection (f) of AS 09.55.549 provides "[t]he limitation on noneconomic damages in this section does not apply if the damages resulted from an act or omission that constitutes reckless or intentional misconduct."

---

[1] Docket Nos. 16 and 39.

Section 549 was enacted by the Alaska Legislature as a part of continuing efforts at tort reform: putting limits on damages and judgments so as to hopefully thereby reduce the cost of medical malpractice insurance and encourage doctors to remain the state. Prior to the enactment of Section 549, the Alaska Legislature had adopted as a part of its earlier tort reform effort AS 09.17.010. That statute provided that non-pecuniary damages, as defined in subsection (a) of Section 010, are capped at $400,000 or $1 million when damages are awarded for severe permanent physical impairment or severe disfigurement. The parties disagree with respect to how, if at all, Section 010 applies in this case.

Plaintiffs contend that they are entitled to recover non-economic damages without limitation if they are able to establish that an act or omission on the part of defendant constituted reckless or intentional misconduct. Defendant contends that its liability for non-economic damages is in all events capped at $1 million pursuant to Section 010. Defendant also contends that allowing unlimited non-economic damages against only health care providers would violate the right to equal protection and due process under the Alaska Constitution.

## Discussion

Defendant urges the court to defer ruling on the above-described disagreement until the court makes its factual findings after trial. The disagreement presently before the court is purely a question of law. Although the ultimate application of the statutes in question depend upon fact-finding – whether or not defendant's acts or omissions were reckless or intentional misconduct – resolution of the parties' disagreement about how Section 549 and Section 010 interact (if at all) is not dependent upon the facts of the case. As plaintiffs point out, knowledge of the defendant's ultimate exposure may facilitate an agreement between the parties to resolve this case.

Defendant's contention that the Alaska Legislature did not intend to impose unlimited non-economic damages on health care providers is unpersuasive. The Alaska Legisla-

ture's intent is first and foremost gauged by the words which it employed if they are unambiguous. Section 549 opens with the following language:

> (a) Notwithstanding AS 09.17.010, noneconomic damages for personal injury or death based on the provision of services by a health care provider may only be awarded as provided in this section.

There is no contention here that defendant is not a health care provider. Plaintiff is seeking non-economic damages for personal injury. Subsection (a) unambiguously provides that plaintiff's non-economic damages for personal injury are to be decided by Section 549, subsections (b) through (h), not as provided in Section 010.

The argument which defendant makes in this case was expressly rejected by this court in <u>Adam v. United States</u>, No. 3:09-cv-0251 (D. Alaska July 5, 2012).[2] After quoting Section 549(a), the court in <u>Adam</u> held: "[t]he Court reads this passage as indicating rather explicitly that medical malpractice damages are governed solely by AS 09.55.549, and not AS 09.17.010."[3]

This court holds that plaintiffs' non-economic damages are governed solely by AS 09.55.549, not AS 09.17.010. Moreover, AS 09.55.549(f) unequivocally informs us that the Alaska Legislature intended that the damages limits established by subsections (d) and (e) of Section 549 do not apply if plaintiffs establish that defendant's conduct was reckless or intentional.

Defendant next contends that if, as held above, its exposure to non-economic damages is unlimited, such result would violate its right to equal protection and due process under the Alaska constitution. Defendant argues that exposing health care providers to unlimited damages for non-economic losses while the exposure of other professionals, such

---

[2]<u>See</u> Opposition to Defendant United States' Cross-Motion for Ruling of Law [etc.], Exhibit 1, Docket No. 47-1. The court notes that the defendant neglected to call <u>Adam</u> to the court's attention.

[3]<u>Id.</u> at 4.

as lawyers, to claims for non-economic losses is limited to $1 million violates the equal protection rules.

There is an equal protection violation if state law treats similarly situated persons differently. See State v. Schmidt, 323 P.3d 647, 660 (Alaska 2014). The legislative history of Section 549 which is before the court establishes the lack of similarity between health care providers such as defendant and other tortfeasors. The legislative findings which support Section 549 explain that the Alaska Legislature's efforts at tort reform in the medical malpractice area had not succeeded in stemming the loss of insurance coverage for health care providers.[4] Indeed, the Legislature describes the situation as a "medical malpractice crisis."[5] The Legislature expressed its concern that "patient access to physicians will be affected dramatically if physicians cannot afford, or obtain at any price, malpractice insurance[.]"[6] Plainly the Alaska Legislature was justified in treating health care providers differently as regards their exposure to liability for medical malpractice.

By AS 09.55.549(d) and (e), the Alaska Legislature granted health care providers much more favorable limits on non-economic damages than is generally available under AS 09.17.010 for other tortfeasors. Section 549 reduces the first tier cap on non-economic damages for ordinary negligence from $400,000 to $250,000, and reduces the second tier cap for permanent physical impairment from $1 million to $400,000. Section 549 does, as the court in Adam held and as this court now holds, remove the $1 million cap on non-economic damages in medical malpractice cases involving reckless or intentional conduct – a subject not addressed by Section 010. Defendant would have the court focus only upon the exposure of health care providers and others in the most serious of injury cases. Defen-

---

[4]Memorandum in Support of United States' Opposition to Plaintiffs' Motion for Ruling on Law of the Case [etc.], Exhibit C at 1, Docket 40-3.

[5]Id.

[6]Id.

dant's focus is far too narrow. The Alaska Legislature's approach to tort reform for health care providers was a broad, complex package. The entirety of Section 549 was aimed at resolving the so-called "medical malpractice crisis," not just the limitations on high-end, non-economic loss cases. In what was a legislative compromise, the first and second tier non-economic loss caps were drastically reduced by Section 549, while a new, unlimited liability category – reckless or intentional conduct – was added by Section 549. This broad restructuring of liability on the part of health care providers for non-economic losses for purposes of meeting the malpractice crisis was based upon a broad distinction between health care providers and other tortfeasors. The Alaska Legislature had good reason to treat health care providers and others differently as to the three tiers of exposure for non-economic losses created by Section 549. That reason was the reduction of malpractice insurance costs for the great majority of claims and the encouragement of physicians and other health care providers to be available to Alaska patients and, at the same time, provide relief for the most serious of medical malpractice injuries. The problems confronting both health care providers and their patients justify the differentiation made by the Alaska Legislature between health care providers and other tortfeasors in general. There is no equal protection violation.

Defendant also contends that Section 549 violates its substantive due process rights. There is a due process violation, however, only if the Alaska Legislature's action bore no reasonable relationship to a legitimate governmental purpose. See Pfeifer v. State Dept. of Health & Soc. Services, 260 P.3d 1072, 1083 (Alaska 2011). Here also, the legislative findings which accompanied the adoption of Section 549 are dispositive. It is plainly reasonable for the State of Alaska to be concerned about the availability of health care services and medical malpractice insurance for health care providers. This is a legitimate governmental purpose. In the absence of adequate insurance, the availability of health care may be constricted; and, if those working in the health care industry are not insured or are

under-insured, then patients are at risk of not being compensated adequately if malpractice occurs. By Section 549, the Alaska Legislature created a three-tiered damages scheme ($250,000 generally; $400,000 in the event of death or severe, permanent, physical impairment; and no limit with respect to reckless or intentional conduct). Reducing the exposure of health care providers to non-economic damages, and thereby reducing medical malpractice insurance costs, plainly serve the Alaska Legislature's purpose of meeting the medical malpractice crisis. Treating those who have acted intentionally or recklessly – in this instance unlimited non-economic damages for those who act recklessly – is a concept that has run through American civil law from the beginning and is not unreasonable. Treating those who act recklessly differently is no violation of due process.

Finally, there were some additional issues raised by plaintiffs in their motion for ruling on law.[7] The parties' briefing indicates that there is no disagreement about the following:

(1) The burden of proof in a medical malpractice case is the preponderance of the evidence standard. AS 09.55.540.

(2) The terms "reckless" or "intentional misconduct" are to be defined by Alaska law.

(3) Although the defendant is silent on the subject, it is clear to the court that Section 549(f) is not punitive. It simply removes limits otherwise applicable to non-economic damages. <u>Adam</u>, No. 3:09-cv-0251 (D. Alaska July 5, 2012)[8]

---

[7]Docket No. 16.

[8]<u>See</u> Opposition to Defendant United States' Cross-Motion for Ruling of Law [etc.], Exhibit 1 at 4, Docket No. 47-1.

## Summary

Plaintiffs' and defendant's cross-motions for ruling of law are granted and denied as set out above.

DATED at Anchorage, Alaska, this  22nd  day of October, 2014.

/s/ H. Russel Holland
United States District Judge

Sec. 09.55.549.  Limitation on damages from health care provider's services.

    (a) Notwithstanding AS 09.17.010, noneconomic damages for personal injury or death based on the provision of services by a health care provider may only be awarded as provided in this section.

    (b) In an action to recover damages for personal injury or wrongful death based on the provision of services by a health care provider, damages may include both economic and noneconomic damages.

    (c) Damage claims for noneconomic losses shall be limited to compensation for pain, suffering, inconvenience, physical impairment, disfigurement, loss of enjoyment of life, loss of consortium, and other nonpecuniary damage, but may not include hedonic damages.

    (d) Except as provided in (e) of this section, the damages awarded by a court or a jury under (c) of this section for all claims including a loss of consortium claim or other derivative claim arising out of a single injury may not exceed $250,000 regardless of the number of health care providers against whom the claim is asserted or the number of separate claims or causes of action brought with respect to the injury.

    (e) The damages awarded by a court or jury under (c) of this section for all claims including a loss of consortium claim or other derivative claim arising out of a single injury or death may not exceed $400,000 regardless of the number of health care providers against whom the claim is asserted or the number of separate claims or causes of action brought with respect to the injury or death when damages are awarded for wrongful death or severe permanent physical impairment that is more than 70 percent disabling.

    (f) The limitation on noneconomic damages in this section does not apply if the damages resulted from an act or omission that constitutes reckless or intentional misconduct.

    (g) Multiple injuries sustained by one person as a result of a single course of treatment shall be treated as a single injury for purposes of this section.

    (h) In this section,

    (1) "economic damages" means objectively verifiable monetary losses incurred as a result of the provision of, use of, or payment for, or failure to provide, use, or pay for health care services or medical products, and includes past and future medical expenses, loss of past and future earnings, cost of obtaining domestic services, burial expenses, loss of use of property, cost of replacement or repair, loss of employment, and loss of business or employment opportunities;

    (2) "health care provider" has the meaning given in AS 09.55.560 and includes a state agency or municipality the health care services of which are the subject of an action that is subject to this section;

    (3) "hedonic damages" means damages that attempt to compensate for the pleasure of being alive.